IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

YAHYI ABDUL SHIHEED,         *

    Plaintiff,                   *

v.                                   *             Civil Action No. GLR-18-3212

C.O. CODY GILPIN,[1]           *

    Defendant.               *
                                      ***

## MEMORANDUM OPINION

THIS MATTER is before the Court on Defendant Correctional Officer Cody Gilpin's Motion to Dismiss, or, in the Alternative, for Summary Judgment (ECF No. 16).[2] The Motion is ripe for disposition, and no hearing is necessary. See Local Rule 105.6 (D.Md. 2018). For the reasons set forth below, the Court will grant the Motion.

### I.     BACKGROUND[3]

Plaintiff Yahyi Abdul Shiheed, who is confined at the North Branch Correctional Institution ("NBCI"), filed a Maryland Division of Correction Request for Administrative

---

[1] Defendant Gilpin's correct name is C.O. Cody Gilpin. The Clerk shall amend the docket to reflect the correct and complete spelling of Gilpin's name as it currently appears in this caption.

[2] Also pending before the Court is Plaintiff Yahyi Abdul Shiheed's "Order to Show Cause for an [sic] Preliminary Injunction and a Temporary Restraining Order," requesting either a transfer from the Western Region or a restraining order against Gilpin (ECF No. 18). Because the Court will grant the Motion to Dismiss, Shiheed's Motion will be denied as moot.

[3] Unless otherwise noted, the Court takes the following facts from Shiheed's Complaint and accepts them as true. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (citations omitted).

Remedy ("RAR"), wherein he alleged that on September 27, 2018, Correctional Officer Cody Gilpin came to his cell door before "bar check" and threatened "to do something" to him. (Compl. at 3).[4] Later that day when Gilpin was returning Shiheed to his cell, Gilpin allegedly reached through the door slot to remove Shiheed's handcuffs and touched his buttocks. (Id.). Shiheed contends that he attempted to move but Gilpin told him that if he moved, Gilpin would mace him. (Id.). Gilpin allegedly touched Shiheed's buttocks again, and when Shiheed moved, Gilpin deployed pepper spray. (Id.). Shiheed admits that he stepped through his handcuffs, bringing his hands in front of his body. (Id.). Shiheed asserts that Gilpin maced him a second time. (Id. at 4). Another officer then ordered Shiheed's cell door opened, and he was removed from his cell without incident. (Id.).

Shiheed's allegation prompted an independent investigation by the Intelligence & Investigative Division ("IID") of the Maryland Department of Public Safety and Correctional Services. (See Def.'s Mot. Dismiss Mot. Summ. J. ["Def.'s Mot."] Ex. 1 ["IID Report"], ECF No. 16-2). The investigator interviewed Gilpin and other witnesses, reviewed the video surveillance footage, and inspected Shiheed's cell door. (IID Report at 10–13). The investigator found that while Gilpin was conducting a bar check at Shiheed's cell, Shiheed was handcuffed from behind and removed from the cell while the check was completed. (Id. at 9). Shiheed was returned to the cell and the cell door was closed. (Id.). Shiheed then stepped through his handcuffs and brought his hands to the front of his body. (Id.). Gilpin directed Shiheed to place his hands at the security slot and, as Gilpin attempted

---

[4] Citations refer to the pagination assigned by the Court's Case Management and Electronic Case Files ("CM/ECF") system.

2

to remove the handcuffs, Shiheed grabbed Gilpin's left hand and pulled, scratching Gilpin's hand and forearm. (Id.). The investigator further concluded that Shiheed ignored Gilpin's orders to release his hand and that Gilpin deployed pepper spray through the security slot to stop the assault. (Id.). Shiheed released his grip on Gilpin's arm and was escorted to the housing unit "strip cage." (Id.). Shiheed refused the decontamination shower and a medical examination. (Id.). Shiheed initially refused to provide a written or verbal statement regarding the incident. (Id. at 9, 48). He did not tell the officer who escorted him or the medical staff that he had been sexually assaulted by Gilpin. (Id. at 37, 46).

An IID investigator interviewed Shiheed on October 12, 2018. (Id. at 10). Contrary to his RAR statement, Shiheed advised the investigator that Gilpin only used pepper spray once. (Id.). Shiheed also reported that an inmate in the next cell, Dafon Canty, heard what happened. (Id.). The investigator interviewed Canty, who stated the he did not see anything but heard Shiheed say, "why you grabbing me, get off me," followed by the sound of pepper spray being deployed. (Id.). Correctional Officer Larry Gilpin, the Defendant's brother, witnessed the incident. (Id. at 11). Larry Gilpin confirmed that Defendant Gilpin twice directed Shiheed to stop pulling away and warned Shiheed that he would be pepper sprayed. (Id.).

During his interview, Defendant Gilpin stated that he did not have any problems with Shiheed prior to the incident and that he did not touch Shiheed inappropriately. (Id.). Gilpin also showed the IID investigator the protective shield covering the security slot on Shiheed's cell door, which would have made it "very difficult for someone to reach completely through the slot as described by Inmate Shiheed." (Id.). Additionally, Gilpin

3

advised the investigator that Shiheed was not happy with his housing and wanted to move to another tier, having made comments like "he may have to do something stupid to get moved." (Id.). The investigator also reviewed the video surveillance footage, which did not show Gilpin doing anything improper at Shiheed's cell door. (Id. at 13). The investigator determined that Shiheed's claim could not be substantiated. (Id.).

As a result of the incident, Shiheed was issued a Notice of Inmate Rule Violation ("NOIRV") charging him with assault on staff and disobeying an order. (Def.'s Mot. Ex. 4 ["NBCI Records"] at 5–6, ECF No 16-5). Shiheed waived his appearance at the rule violation hearing, which was held on October 2, 2018. (Id. at 5–6). A plea of not guilty was entered on Shiheed's behalf, and the hearing proceeded in his absence. (Id. at 6–7). Upon reviewing photographs and Gilpin's Use of Force Report, the Hearing Officer found Shiheed guilty of assault on staff and disobeying an order. (Id. at 7). In sentencing Shiheed, the Hearing Officer noted that Shiheed had been found guilty of six prior assaults on staff. (Id. at 7–8). The Hearing Officer sentenced Shiheed to 180 days segregation and revoked 250 good conduct credits. (Id. at 8).

On October 15, 2018, Shiheed, proceeding pro se, sued Gilpin under 42 U.S.C. § 1983 (2018). (ECF No. 1). On December 4, 2018, Shiheed filed a Supplemental Complaint alleging that he was beaten by unnamed correctional officers on November 4, 2018 and placed in isolation. (Suppl. Compl. at 1, ECF No. 6). He also asserted that prison personnel were interfering with his mail, and that he was being denied

food and access to hygiene products as retaliation for filing this action. (Id. at 1–2).[5] On April 15, 2019, Gilpin filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment. (ECF No. 16). Shiheed filed an Opposition on May 3, 2019. (ECF No. 19). To date, Gilpin has not filed a Reply. Without seeking leave of Court, Shiheed filed a second Supplemental Complaint on November 21, 2019. (ECF No. 21).

Gilpin continues to deny that he threatened Shiheed. (Def.'s Mot. Ex. 2 ["Gilpin Decl."] ¶ 3, ECF No. 16-3). Gilpin denies reaching through the door slot and touching Shiheed's buttocks or threatening to mace Shiheed if he moved. (Id.). Gilpin asserts that he did not deploy pepper spray while Shiheed was handcuffed. (Id.). He contends that Shiheed stepped through his handcuffs and grabbed Gilpin's left hand through the security slot while Gilpin attempted to remove Shiheed's cuffs. (Id.). Gilpin asserts that he gave Shiheed direct orders to stop and when Shiheed refused to comply, he deployed pepper spray. (Id.).

## II.   DISCUSSION

**A.   Standard of Review**

**1. Rule 12(b)(6) Motion to Dismiss**

The purpose of a Rule 12(b)(6) motion is to "test[ ] the sufficiency of a complaint,"

---

[5] Shiheed does not allege that Gilpin participated in the events complained of in the Supplemental Complaint. Additionally, a Use of Force investigation was conducted regarding the November 4, 2018 incident, which revealed that Gilpin was not involved. (See NBCI Records at 14–26). Liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. Trulock v. Freeh, 275 F.3d 391, 402 (4th Cir. 2001). Accordingly, the allegations contained in Shiheed's first Supplemental Complaint (ECF No. 6) regarding the November 4, 2018 assault, retaliation, and confinement in an isolation cell are dismissed without prejudice.

5

not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." King v. Rubenstein, 825 F.3d 206, 214 (4th Cir. 2016) (quoting Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999)). A complaint fails to state a claim if it does not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), or does not "state a claim to relief that is plausible on its face," Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). Though the plaintiff is not required to forecast evidence to prove the elements of the claim, the complaint must allege sufficient facts to establish each element. Goss v. Bank of Am., N.A., 917 F.Supp.2d 445, 449 (D.Md. 2013) (quoting Walters v. McMahen, 684 F.3d 435, 439 (4th Cir. 2012)), aff'd sub nom., Goss v. Bank of Am., NA, 546 F.App'x 165 (4th Cir. 2013).

In considering a Rule 12(b)(6) motion, a court must examine the complaint as a whole, consider the factual allegations in the complaint as true, and construe the factual allegations in the light most favorable to the plaintiff. Albright v. Oliver, 510 U.S. 266, 268 (1994); Lambeth v. Bd. of Comm'rs of Davidson Cty., 407 F.3d 266, 268 (4th Cir. 2005) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)). But, the court need not accept unsupported or conclusory factual allegations devoid of any reference to actual events, United Black Firefighters v. Hirst, 604 F.2d 844, 847 (4th Cir. 1979), or legal conclusions

couched as factual allegations, Iqbal, 556 U.S. at 678.

When, as here, the plaintiff is proceeding pro se, the Court will liberally construe the pleadings, which are held to a less stringent standard than pleadings drafted by lawyers. Erickson, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)); accord Brown v. N.C. Dep't of Corr., 612 F.3d 720, 722 (4th Cir. 2010). Pro se complaints are entitled to special care to determine whether any possible set of facts would entitle the plaintiff to relief. Hughes v. Rowe, 449 U.S. 5, 9–10 (1980). But even a pro se complaint must be dismissed if it does not allege "a plausible claim for relief." Forquer v. Schlee, No. RDB-12-969, 2012 WL 6087491, at *3 (D.Md. Dec. 4, 2012) (citation and internal quotation marks omitted).

**2. Rule 56 Motion for Summary Judgment**

In reviewing a motion for summary judgment, the Court views the facts in a light most favorable to the nonmovant, drawing all justifiable inferences in that party's favor. Ricci v. DeStefano, 557 U.S. 557, 586 (2009); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 158–59 (1970)). Summary judgment is proper when the movant demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a), (c)(1)(A). Significantly, a party must be able to present the materials it cites in "a form that would be admissible in evidence," Fed.R.Civ.P. 56(c)(2), and supporting affidavits and declarations "must be

made on personal knowledge" and "set out facts that would be admissible in evidence," Fed.R.Civ.P. 56(c)(4).

Once a motion for summary judgment is properly made and supported, the burden shifts to the nonmovant to identify evidence showing there is a genuine dispute of material fact. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986). The nonmovant cannot create a genuine dispute of material fact "through mere speculation or the building of one inference upon another." Othentec Ltd. v. Phelan, 526 F.3d 135, 141 (4th Cir. 2008) (quoting Beale v. Hardy, 769 F.2d 213, 214 (4th Cir. 1985)).

A "material fact" is one that might affect the outcome of a party's case. Anderson, 477 U.S. at 248; see also JKC Holding Co. v. Wash. Sports Ventures, Inc., 264 F.3d 459, 465 (4th Cir. 2001) (citing Hooven-Lewis v. Caldera, 249 F.3d 259, 265 (4th Cir. 2001)). Whether a fact is "material" is determined by the substantive law, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248; accord Hooven-Lewis, 249 F.3d at 265. A "genuine" dispute concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. Anderson, 477 U.S. at 248. If the nonmovant has failed to make a sufficient showing on an essential element of his case where he has the burden of proof, "there can be 'no genuine [dispute] as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986).

**3. Conversion**

Gilpin styles his Motion as a motion to dismiss under Rule 12(b)(6) or, in the alternative, for summary judgment under Rule 56. A motion styled in this manner implicates the Court's discretion under Rule 12(d). See Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cty., 788 F.Supp.2d 431, 436–37 (D.Md. 2011), aff'd, 684 F.3d 462 (4th Cir. 2012). This Rule provides that when "matters outside the pleadings are presented to and not excluded by the court, the [Rule 12(b)(6)] motion must be treated as one for summary judgment under Rule 56." Fed.R.Civ.P. 12(d). The Court "has 'complete discretion to determine whether or not to accept the submission of any material beyond the pleadings that is offered in conjunction with a Rule 12(b)(6) motion and rely on it, thereby converting the motion, or to reject it or simply not consider it.'" Wells-Bey v. Kopp, No. ELH-12-2319, 2013 WL 1700927, at *5 (D.Md. Apr. 16, 2013) (quoting 5C Wright & Miller, Federal Practice & Procedure § 1366, at 159 (3d ed. 2004, 2012 Supp.)).

The United States Court of Appeals for the Fourth Circuit has articulated two requirements for proper conversion of a Rule 12(b)(6) motion to a Rule 56 motion: notice and a reasonable opportunity for discovery. See Greater Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor of Balt., 721 F.3d 264, 281 (4th Cir. 2013). When the movant expressly captions its motion "in the alternative" as one for summary judgment and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur. See Moret v. Harvey, 381 F.Supp.2d 458, 464 (D.Md. 2005). The Court "does not have an obligation to notify parties of the obvious." Laughlin v. Metro. Wash. Airports Auth., 149 F.3d 253, 261 (4th Cir. 1998).

Ordinarily, summary judgment is inappropriate when "the parties have not had an

opportunity for reasonable discovery." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011). Yet, "the party opposing summary judgment 'cannot complain that summary judgment was granted without discovery unless that party had made an attempt to oppose the motion on the grounds that more time was needed for discovery.'" Harrods Ltd. v. Sixty Internet Domain Names, 302 F.3d 214, 244 (4th Cir. 2002) (quoting Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 961 (4th Cir. 1996)). To raise sufficiently the issue that more discovery is needed, the non-movant must typically file an affidavit or declaration under Rule 56(d), explaining the "specified reasons" why "it cannot present facts essential to justify its opposition." Fed.R.Civ.P. 56(d). A Rule 56(d) affidavit is inadequate if it simply demands "discovery for the sake of discovery." Hamilton v. Mayor of Balt., 807 F.Supp.2d 331, 342 (D.Md. 2011) (citation omitted). A Rule 56(d) request for discovery is properly denied when "the additional evidence sought for discovery would not have by itself created a genuine issue of material fact sufficient to defeat summary judgment." Ingle ex rel. Estate of Ingle v. Yelton, 439 F.3d 191, 195 (4th Cir. 2006) (quoting Strag v. Bd. of Trs., Craven Cmty. Coll., 55 F.3d 943, 953 (4th Cir. 1995)).

The Fourth Circuit has warned that it "'place[s] great weight on the Rule 56[d] affidavit' and that 'a reference to Rule 56[d] and the need for additional discovery in a memorandum of law in opposition to a motion for summary judgment is not an adequate substitute for a Rule 56[d] affidavit.'" Harrods, 302 F.3d at 244 (quoting Evans, 80 F.3d at 961). Failing to file a Rule 56(d) affidavit "is itself sufficient grounds to reject a claim that the opportunity for discovery was inadequate." Id. (quoting Evans, 80 F.3d at 961).

Nevertheless, the Fourth Circuit has indicated that there are some limited instances in which summary judgment may be premature notwithstanding the non-movants' failure to file a Rule 56(d) affidavit. See id. A court may excuse the failure to file a Rule 56(d) affidavit when "fact-intensive issues, such as intent, are involved" and the nonmovant's objections to deciding summary judgment without discovery "serve[] as the functional equivalent of an affidavit." Id. at 245 (quoting First Chicago Int'l v. United Exch. Co., 836 F.2d 1375, 1380–81 (D.C.Cir. 1988)).

Here, the parties were on notice that the Court might resolve Gilpin's Motion under Rule 56, because Gilpin styled his Motion in the alternative for summary judgment and presented extensive extra-pleading material for the Court's consideration. See Moret, 381 F.Supp.2d at 464. Shiheed filed an Opposition to the Motion but did not file a Rule 56(d) affidavit. His Opposition neither directly nor indirectly states that he requires additional discovery or that his opportunity to conduct discovery was somehow inadequate. Accordingly, the Court concludes that both parties had adequate time to conduct discovery and that review of the Motion under Rule 56 is appropriate.

**B.    Analysis**

   **1. Excessive Force**

When determining if prison officials used excessive force, the Court considers whether the "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 6–7 (1992). The Court must look at the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat

to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response. Whitley v. Albers, 475 U.S. 312, 321 (1986). The absence of significant injury alone is not dispositive of a claim of excessive force. Wilkins v. Gaddy, 559 U.S. 34, 37 (2010). The seriousness of the prisoner's injury is one factor indicative of whether the applied force was necessary under the circumstances, but if force is applied maliciously and sadistically, liability is not avoided simply because the prisoner was not seriously injured. Id. at 38.

Use of pepper spray as a means of force may support an Eighth Amendment violation if prison officials "use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain." Iko v. Shreve, 535 F.3d 225, 240 (4th Cir. 2008) (quoting Williams v. Benjamin, 77 F.3d 756, 763 (4th Cir. 1996) (emphasis omitted)). However, the use of pepper spray does not amount to "per se . . . cruel and unusual punishment," McCargo v. Mister, 462 F.Supp. 813, 818 (D.Md. 1978), and is permissible when used to control a recalcitrant inmate, Williams, 77 F.3d at 763. The focus of the analysis for a claim of excessive use of force, as noted, is on the subjective intent of the defendant, i.e., whether the defendant acted with a sufficiently culpable state of mind. See Iko, 535 F.3d at 238 (denying qualified immunity to correctional officer who deployed chemical agent into inmate's cell after inmate complied with orders, did not react violently, and officer failed to take steps to ameliorate effects of chemical agent).

A subjective intent to cause harm is supported where an officer uses more than a reasonable amount of a chemical agent to restore discipline. See Furnace v. Sullivan, 705 F.3d 1021, 1025 (9th Cir. 2013) (finding Eighth Amendment violation where officer

discharged can of pepper spray until empty and other officer joined in); see also Lawrence v. Bowersox, 297 F.3d 727, 732 (8th Cir. 2002) (same, where prisoner's entire cell was doused in pepper spray using fire-extinguisher-like device); DeSpain v. Uphoff, 264 F.3d 965, 978 (10th Cir. 2001) (same, where officer indiscriminately sprayed entire prison tier). Under some circumstances, however, multiple applications of a chemical agent have been found reasonable where an inmate repeatedly ignores orders issued by a correctional officer. See Jackson v. Morgan, 19 F.App'x 97, 102 (4th Cir. 2001) (upholding use of pepper spray twelve times when inmate refused to comply with commands to move from his cell). Use of chemical agents is reasonable when an officer is attempting to maintain order and discipline in the institution. Santiago v. Walls, 599 F.3d 749, 757 (7th Cir. 2010) (determining that Eighth Amendment was not violated where pepper spray was used to break up inmate fight); Combs v. Wilkinson, 315 F.3d 548, 558 (6th Cir. 2002) (concluding that use of pepper spray during a prison riot was appropriate).

The record clearly demonstrates that Shiheed failed to comply with Gilpin's orders, slipped his handcuffs to the front, and assaulted a correctional officer. Gilpin was justified in using pepper spray to subdue Shiheed, who not only refused to comply with direct orders but also assaulted Gilpin. Gilpin's use of a short burst of pepper spray was a reasonable, tempered response under the circumstances. Further, it is reasonable to infer that the amount of pepper spray deployed was not excessive given that Shiheed declined a decontamination shower and refused to submit to medical examination. Accordingly, the Court concludes that Gilpin is entitled to summary judgment as to Shiheed's claim of excessive force.

## 2. Sexual Assault

"[S]evere or repetitive sexual abuse of an inmate by a prison officer can be objectively, sufficiently serious enough to constitute an Eighth Amendment violation." Boddie v. Schneider, 105 F.3d, 857, 861 (2d Cir. 1997). Isolated episodes of harassment and touching "are despicable and, if true, they may potentially be the basis of state tort actions. But they do not involve harm of federal constitutional protections as defined by the Supreme Court." Id. at 861. "An unwanted touching of a person's private parts, intended to humiliate the victim or to gratify the assailant's sexual desires, can violate a prisoner's constitutional rights whether or not the force exerted by the assailant is significant." Washington v. Hively, 695 F.3d 641, 643 (7th Cir. 2012). Sexual contact between an inmate and correctional guard "serve no legitimate role and 'is simply not part of the penalty that criminal offenders pay for their offenses against society.'" Wood v. Beauclair, 692 F.3d 1041, 1050 (9th Cir. 2012) (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).

Here, Shiheed's allegation of a sexual assault by Gilpin is unsupported by the evidence in the record. Although Shiheed filed an affidavit in which he alleges that he was sexually assaulted by Gilpin, there is no corroboration and the IID investigator determined that his claim was unsubstantiated. Moreover, Shiheed did not immediately report the alleged sexual assault. He also provided conflicting accounts of the incident on his RAR statement and during his interview with the IID investigator. Gilpin has specifically denied assaulting Shiheed and consistently reported his version of events. There is only one eyewitness, who corroborates Gilpin's version of events, as does the surveillance video.

Lastly, the physical barrier on Shiheed's cell door slot, inspected by the IID investigator, made it physically difficult for the assault to occur as Shiheed claims. If a party's statement of a fact is "blatantly contradicted by the record, so that no reasonable jury could believe it," the Court credits the record over the averred fact. Scott v. Harris, 550 U.S. 372, 380 (2007). Accordingly, even when viewing the record most favorably to Shiheed, no rational fact finder could conclude that the sexual assault occurred as Shiheed alleges.

### 3. Allegations in Supplemental Complaint

Shiheed filed his second Supplemental Complaint on November 21, 2019, alleging that Gilpin threatened to have other officers assault him in retaliation for filing the current lawsuit. The Court will dismiss those claims.

A plaintiff seeking to amend or supplement his complaint for the second or subsequent time must obtain opposing counsel's consent or seek leave of court. Fed.R.Civ.P. 15(a)(2). While the court is encouraged to "freely give leave" to a plaintiff seeking to amend when justice so requires, the court may deny a motion to amend where, as here, such an amendment would prejudice the opposing party or be futile. Green v. Balt. City Police Dept., No. WMN-10-3216, 2011 WL 335868, at *1 (D.Md. Jan. 31, 2011).

Here, there is no evidence that Shiheed obtained opposing counsel's consent and, Shiheed failed to petition the Court for leave to amend his Complaint. Moreover, the Supplemental Complaint, which was filed well over a year after this litigation began and more than seven months after Gilpin filed his dispositive Motion, details new allegations of threats of harm that allegedly occurred in November 2019, none of which Gilpin has been afforded an opportunity to investigate or challenge. Furthermore, the amendment is

futile because it fails to remedy the defects identified above. Accordingly, the allegations contained in Shiheed's Supplemental Complaint (ECF No. 21) regarding the November 14, 2019 and November 16, 2019 incidents are dismissed without prejudice.

### 4. Injunctive Relief

Because the Court will grant Gilpin's Motion, Shiheed's request for preliminary injunction may be denied as moot. However, even in examining the merits of his Motion, the Court must deny it. A preliminary injunction is an extraordinary and drastic remedy to be granted sparingly. See Munaf v. Geren, 553 U.S. 674, 689–90 (2008). A party seeking a preliminary injunction or temporary restraining order must establish: (1) a likelihood of success on the merits; (2) irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the party's favor; and (4) that the injunction is in the public interest. Winter v. Nat. Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). As to irreparable harm, the movant must show the harm to be "neither remote nor speculative, but actual and imminent." Direx Israel, Ltd. v. Breakthrough Med. Group, 952 F.2d 802, 812 (4th Cir. 1991) (citation omitted). In the prison context, courts should grant injunctive relief involving the management of correctional institutions only under exceptional and compelling circumstances. See Taylor v. Freeman, 34 F.3d 266, 269 (4th Cir. 1994). Because Shiheed has failed to demonstrate the likelihood of success on the merits, this alone defeats his request for injunctive relief. Alternatively, Shiheed has failed to demonstrate that the balance of equities tip in favor of granting the injunction or that such relief is in the public interest. Shiheed's Motion will be denied.

### III. CONCLUSION

For the foregoing reasons, Gilpin's Motion to Dismiss or, in the Alternative, for Summary Judgment (ECF No. 16), construed as one for summary judgment, is GRANTED. Shiheed's Order to Show Cause for a Preliminary Injunction and a Temporary Restraining Order (ECF No. 18) is DENIED. The allegations contained in Shiheed's Supplemental Complaints (ECF Nos. 6, 21) are DISMISSED without prejudice. A separate Order follows.

Entered this 23rd day of January, 2020.

/s/
George L. Russell, III
United States District Judge